UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

OSSEO AREA SCHOOLS,
INDEPENDENT SCHOOL
DISTRICT NO. 279,

    Plaintiff,

v.

A.J.T., by and through her
parents, A.T. and G.T.,

    Defendant.

**MEMORANDUM OF LAW AND ORDER**
Civil File No. 21-1453 (MJD/DTS)

Christian R. Shafer, Elizabeth M. Meske, and Laura Tubbs Booth, Ratwik, Roszak & Maloney, PA, Counsel for Osseo Area Schools, Independent School District No. 279.

Amy J. Goetz, School Law Center, LLC, Counsel for A.J.T.

I.  **INTRODUCTION**

This matter is before the Court on Defendant's Motion for an Order to Show Cause Why Plaintiff Should Not be Found in Contempt. (Doc. 69.) Specifically, AJT seeks an order requiring Osseo Area Schools Superintendent Cory McIntyre to appear in person to show cause, if any, as to why an order should not be entered (1) adjudging the Osseo Area Schools and McIntyre guilty

1

of failing and refusing to obey the Court's Order affirming the Court's September 13, 2022 Order in this case; (2) requiring the District to pay a fine of $5000 per day until it complies with the Order; and (3) committing McIntyre to confinement until the District complies with the Order.

## II.   BACKGROUND

The basic facts of this case are well-known to the Parties. The facts relevant to this motion are that AJT's April 24, 2017 IEP, which included a 4.25-hour school day that begins at noon and ends at 4:15 became AJT's "stay put IEP" when this case was being litigated and followed her from grade school to middle school where AJT's school day was extended beyond the school day of her non-disabled peers. AJT is now in high school where the school day ends at 2:00 p.m. At the time AJT filed her motion, the District had been unable to find a licensed teacher for AJT from 2:00 to 4:15 p.m. However, on November 14, 2022, a licensed teacher and paraprofessional team began teaching Monday, Tuesday, and Wednesday during these hours and the District continues to look for qualified professionals to staff this period of time on Thursdays and Fridays. (Doc. 73 at 5.)

On April 21, 2022, after an administrative hearing, an ALJ found, in part, that AJT "established that 495 hours of instruction would fairly remediate the

denial of a FAPE" and that, among other things, adding "instruction at home that includes discrete trial training interventions between 4:30 p.m. and 6:00 p.m. each school day" would "result in an educational program that is responsive to her individual needs and [is] appropriately ambitious in light of her circumstances." (ALJ Order Conclusions ¶¶ 14-15.) The "stay put" IEP was in place at the time the ALJ issued his order.

On September 13, 2022, the Court affirmed the ALJ's Order, stating that "extending [ALJ's] instructional day until 6:00 p.m. and including compensatory hours of instruction as found by the ALJ is the appropriate remedy." (Doc. 61 at 65-66.)

On November 17, 2022, the Parties filed a document called "Stipulation of the Parties to Partial Resolution." (Doc. 78.) The stipulation states that the District is now providing services to AJT from 2:00 to 4:30 p.m. on Mondays, Tuesdays, and Wednesdays, and has agreed to "provide compensatory education services for any missed services from September 6, 2022 to November 11, 2022, and will agree to provide compensatory services for any missed services for any time A.J.T. is provided less than full services from noon to 6:00 p.m." (Id. at 1.) Accordingly, the Parties request that Defendant's motion be interpreted to

only include claims for failure to provide services between 2:00 and 4:15 p.m. on Thursdays and Fridays after November 11, 2022.  (Id. at 2.)

The Court will abide by the Parties' stipulation and address Defendant's Motion for an Order to Show Cause Why Plaintiff Should Not be Found in Contempt as a motion that addresses only the District's failure to provide services between 2:00 and 4:15 p.m. on Thursdays and Fridays after November 11, 2022.

### III.  AJT'S ARGUMENTS

At the time AJT first filed her motion, she asserted that beginning this school year, the District failed to provide her a full school day and had dismissed her at 2:15 every day since the beginning of the school year.  (Doc. 69 at 2; Doc. 70 (AT Aff.) ¶¶ 8-10.)  AJT stated that two paraprofessionals who currently work with her were willing to provide additional support if the District will hire them to do so.  (Doc. 70 (AT Aff.) ¶ 16.)  She noted that she is now receiving fewer hours of education than when this litigation began.  She now confines those assertions to Thursdays and Fridays.

AJT argues that it is appropriate to hold a chief operating officer in contempt for violating a court order where he had notice of the court's order and responsibility to comply with it even though he was not personally named in the

4

litigation or order. (Doc. 69 at 5 (citing Chicago Truck Drivers v. Bhd. Labor Leasing, 207 F.3d 500, 507 (8th Cir. 2000).) Therefore, AJT asks the Court for an order requiring McIntyre to appear in person to show cause, if any, as to why an order should not be entered adjudging the Osseo Area Schools and McIntyre guilty of failing and refusing to obey the Order issued by the Court, and further, why the District should not be fined per diem a substantial amount and why McIntyre should not be committed to confinement until compliance with the order. (Id. at 1.)

## IV.    DISCUSSION

### A.    Civil Contempt Standard

In a civil contempt proceeding, the moving party must prove, by clear and convincing evidence, that the person allegedly in contempt violated the court's order. Chicago Truck Drivers, 207 F.3d at 505. See also 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."). "However, the moving party does not need to show that the violation of the court's order was willful." Faegre & Benson, LLP v. Purdy, 367 F. Supp. 2d 1238, 1243 (D. Minn. 2005) (citations omitted).

Once the moving party has met its burden, the burden shifts to the nonmoving party to show inability to comply. Chicago Truck Drivers, 207 F.3d at 505. To demonstrate inability to comply, nonmoving parties must establish "(1) that they were unable to comply, explaining why categorically and in detail, (2) that their inability to comply was not self-induced, and (3) that they made in good faith all reasonable efforts to comply." United States v. Santee Sioux Tribe of Neb., 254 F.3d 728, 736 (8th Cir. 2001) (citation omitted).

"Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both." Chicago Truck Drivers, 207 F.3d at 505. The Court may levy a fine against the party in contempt, which is payable to the moving party or to the Court or may order imprisonment. Id. In order for an order of incarceration to constitute civil, and not impermissible criminal, contempt, the defendant held in contempt must be able to obtain release from custody by purging himself of contempt: in other words, the defendant "carries the keys of his prison in his own pocket." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828 (1994).

**B.      Analysis**

Although AJT asserts that the District does not take the Court's Order seriously "or it would comply with the order" (Doc. 70 (AT Aff.) ¶ 18), there is no indication that the District does not take the Order seriously or that it is not attempting to comply with the Order. Rather, the Court agrees that the District is making "every good faith effort to continue to comply with the Order." (Doc. 73 at 2.)

While AJT has technically shown that the District has failed to comply with the Court's order regarding afternoon instruction on Thursdays and Fridays, the District has successfully demonstrated an inability to comply. See Santee Sioux Tribe, 254 F.3d at 736. The District's inability to comply was not self-induced and it has, as will be further discussed below, "categorically and in detail" explained why it has been unable to comply and that it made in good faith all reasonable efforts to do so. Id.

The District notes that it, along with other school districts, is caught in a special education staffing shortage. (Doc. 74 (Booth Aff.) ¶¶ 4-6; Doc. 74-1 (articles discussing the national and state-wide shortage of special education teachers); Doc. 75 (Emmons Aff.) ¶¶ 7-8 (explaining that one week prior to the start of the 2022 school year, the District had 80 unfilled special education

7

vacancies and that on November 9, 2022, 75 positions still remained unfilled); Doc. 77 (Anderson Aff. ¶¶ 5-6 (noting that as of Nov. 9, 2022, the District has 75 open special education positions and over 185 "non-casual" position vacancies).) The District also went down many creative avenues beyond posting its special education openings on job sites to attract candidates and/or to work with current district staff to meet its obligations to AJT. (Doc. 75 (Emmons Aff.) ¶¶ 9-20, 22-24; Doc. 76 (McLuen Aff.) ¶¶ 10-13 (paragraph 13 lists ways McLuen personally reached out to try to fill vacancy).) The District provided the Court with a list of the many efforts it put forth to hire qualified teachers to work with AJT including, but not limited to, posting the position in various places both inside and outside of the District; attending job fairs to recruit candidates; contacting recruiting services; soliciting internal staff and other school districts; attempting to reassign current staff; contacting former retired employees and employees who are on leave; and contacting the Special Education Director for Intermediate School District 287, which provides education to member district students with special needs. (Doc. 73 at 6-7; Emmons Aff. ¶¶ 9-19.)

At one point, the District offered to transport AJT and her support staff from the high school to the middle school for instruction until 4:15 p.m. (Doc. 75

8

(Emmons Aff.) ¶ 14.) This proposal was rejected by AJT's parents. (Id.) AJT's parents also originally rejected having a male teacher work with AJT from 2:00 to 4:15 p.m. (Id. ¶ 15.) However, they have now apparently acquiesced because this teacher along with a female paraprofessional began working with AJT on November 14. (Id. ¶ 20; Doc. 78 at 1.) This is the "Monday to Wednesday" team the District has been able to assemble for the 2:00 to 4:15 p.m. time slot. The District notes that one of the paraprofessionals that AJT mentions in her brief is part of this Monday to Wednesday team. The other paraprofessional could not be reassigned because doing so would cause a staffing shortage in her current school building.

In addition, although AJT need not prove that the District's violation of the Order is willful, the District is maintaining a log of the compensatory hours it is unable to provide to AJT so it can provide those hours when staffing is available. (Doc. 76 (McLuen Aff.) ¶ 8; Doc. 78 at 1.) This is not the act of a party attempting to circumvent a Court Order, but rather evidences a party attempting to comply with a Court Order.

Finally, based on the realities of this situation, levying a fine against the District or jailing the District's Superintendent of Schools does not seem

necessary to "coerce the [District] into compliance with a court order or to compensate the complainant for losses sustained, or both." Chicago Truck Drivers, 207 F.3d at 505. Neither of these remedies will make the shortage of special education specialists disappear.

Based on the above analysis, the Court finds it unnecessary to reach the District's alternative argument that AJT was required to exhaust administrative remedies before filing the instant motion. (Doc. 73 at 13-15.)

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

Defendant's Motion for an Order to Show Cause Why Plaintiff Should Not be Found in Contempt **(Doc. 69)** is **DENIED**.

Date: November 18, 2022

                                       s/Michael J. Davis
                                       Michael J. Davis
                                       United States District Court