## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

OSSEO AREA SCHOOLS,
INDEPENDENT SCHOOL
DISTRICT NO. 279,

              Plaintiff,

  v.

                          **MEMORANDUM OF LAW AND
ORDER ON DEFENDANT A.J.T.'S
SUPPLEMENTAL MOTION
FOR ATTORNEYS' FEES**
Civil File No. 21-01453 (MJD/DTS)

A.J.T., by and through her parents,
A.T. and G.T.,

              Defendants.

Christian R. Shafer, Elizabeth M. Meske, Laura Tubbs Booth, and Adam J.
Frudden, Ratwik, Roszak & Maloney, PA, Counsel for Osseo Area Schools,
Independent School District No. 279.

Amy J. Goetz, School Law Center, LLC, Counsel for A.J.T

## I.    INTRODUCTION

This matter is before the Court on Defendant A.J.T.'s Supplemental Motion

for Attorney Fees.  Osseo Area Schools ("Osseo") opposes the motion as

untimely and opposes the amount of fees A.J.T. requests.

## II.    BACKGROUND

### A.    Factual History

For three years, A.J.T.'s parents tried to work with Osseo to secure an individualized education plan ("IEP") that provided A.J.T. a free appropriate public education ("FAPE"), but the parties could not come to a resolution because Osseo denied A.J.T.'s parents' requests for evening instruction "with a series of shifting explanations." Osseo Area Schs., Indep. Sch. Dist. No. 279 v. A.J.T. ex rel. A.T., 96 F.4th 1062, 1064 (8th Cir. 2024). A.J.T.'s parents finally filed a complaint with the Minnesota Department of Education and on April 21, 2021, an administrative law judge ("ALJ") found that Osseo had denied A.J.T. a FAPE. After the decision, Osseo still failed to provide the accommodations the ALJ found necessary to provide A.J.T. with a FAPE.

### B.    Procedural History

On June 21, 2021, Osseo commenced this action, seeking reversal of the ALJ's decision. (Doc. 1.) On September 13, 2022, this Court affirmed the ALJ's decision. (Doc. 61.) On March 21, 2024, the Eighth Circuit affirmed this Court's decision. Osseo Area Schs. 96 F.4th at 1067.

On April 4, 2024, A.J.T. filed a motion in the Eighth Circuit for costs and fees, which consisted of $255,856.25 in fees, $1518.78 in costs, plus double costs,

and $10,000 in just damages because Osseo's appeal was frivolous.  (Doc. 85 at 2;

Entry ID. 5380313 (Apr. 4, 2024 Goetz Decl.) ¶¶ 28-30.)[1][2]  She added a claim for

an additional $3500.00 for filing a reply, which brought the total fees claim to

$259,356.25.  (Doc. 85 at 2; Doc. 86 (Aug. 27, 2024 Goetz Suppl. Decl.) ¶ 2).)

On May 30, 2024, the Eighth Circuit found that $69,137.50 of the total claim

was attributable to the appeal; reduced that amount by 15% because entries were

block billed, vague, and billed in quarter-hour increments; and awarded A.J.T.

$58,766.88 in attorneys' fees and $1,418.28 in costs for a total award of $60,185.16.

(Entry ID 5398933 at 1-2.)  The court did not award double costs or just damages

because the appeal was not frivolous or wholly without merit.  (Id. at 2.)  A.J.T.

could seek fees attributable to district court proceedings before this Court.  (Id.)

On August 27, 2024, A.J.T. (variously "A.J.T." or "Counsel") filed the

instant motion, which she supplemented in her reply to Osseo's response to her

motion.  Between the two documents, A.J.T. requests $205,298.75 in fees:

(1)      $190,218.75 from the unpaid fees claim filed in the Eighth Circuit;

---

[1] All "Entry ID" citations are to exhibits filed in the Eighth Circuit and are
incorporated by reference into A.J.T.'s briefs in support of her motion for
attorneys' fees.

[2] The Court notes that numbering starts over from 1 at least three times in Entry
ID 5380313.  Hopefully, the pages the Court refers to will be obvious in context.

3

(2)    $6,480.00 incurred between the time of the Eighth Circuit's order until August 27, 2024, the date A.J.T. filed her fees petition in this Court (Doc. 93 (Goetz Second Suppl. Decl.) ¶ 7)[3]; plus

(3)    $8,600.00 incurred from August 27, 2024 to September 17, 2024 for preparing reply to Osseo's opposition to fees motion (Id. ¶¶ 6-7).

In addition, A.J.T. requests the $60,185.16 in cost and fees the Eighth Circuit awarded, plus statutory interest on that amount from the date of the Eighth Circuit's order at a daily rate of .0122%.  (Id. ¶ 8.)[4]

## III.    PREVAILING PARTY

The IDEA provides for the discretionary award of reasonable attorneys' fees "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B).   To be a prevailing party for purposes of IDEA attorneys' fees, a litigant "must obtain actual relief on the merits of [her] claim that materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  R.M.M. ex rel. T.M. v. Minneapolis Pub. Sch., Special Sch. Dist. No. 1, No. 15-CV-1855 (SRN/HB), 2017 WL 6453302, at *2 (D. Minn. Dec. 15, 2017) (cleaned up and internal citations omitted).  "[T]he most important factor in determining what is

---

[3] A typographical error in the declaration has the paragraph numbered "¶ 4."
[4] A typographical error in the declaration has the paragraph numbered "¶ 5."

a reasonable fee is the magnitude of the plaintiff's success in the case as a whole."

Jenkins v. Missouri, 127 F.3d 709, 716 (8th Cir. 1997) (holding  that if a plaintiff

"has won excellent results, [she] is entitled to a fully compensatory fee award").

Here, there can be no dispute that A.J.T. was the prevailing party.  The

relief she achieved through this litigation materially changed the relationship

between the parties, and Osseo now must provide A.J.T. with the following:

- instruction from 4:30 p.m. to 6:00 p.m. at home with discrete trial interventions with data compilation and review;
- direct and indirect services of a Speech and Language Pathologist to design, deliver and monitor the implementation of a communication intervention program;
- the provision of eye gaze technology with a speech generating device to effectively augment [A.J.T.'s] communication capacities; and
- 495 hours of compensatory education services.

(Entry ID 5380313 (A.J.T. Eighth Cir. Br. in Supp. Mot. Atty. Fees) at 18.)

The above instruction and interventions "repair the harm [A.J.T.] suffered

from being deprived her educational rights.  This right to compensatory

education suffices to make [A.J.T.] a 'prevailing party' entitled to attorneys'

fees."  Birmingham v. Omaha Sch. Dist., 298 F. 3d 731, 734 (8th Cir. 2002).

## IV.   TIMELINESS OF MOTION FOR ATTORNEYS' FEES

In general, "unless a statute or a court order provides otherwise, the

motion [for attorneys' fees] must be filed no later than 14 days after the entry of

judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). Under Rule 54, "judgment" means "any order from which an appeal lies." Rule 54(a); see also, Paris Sch. Dist. v. Harter, 894 F.3d 885, 890 (8th Cir. 2018) (explaining that absent a court order, the "default rule" is that motions for attorneys' fees are due within 14 days after entry of judgment). One purpose of the filing deadline is to "assure that the opposing party is informed of the claim before the time for appeal has elapsed." Fed. R. Civ. P. 54(d)(2)(B) advisory committee's note to 1993 amendment.

After the filing deadline has passed, a party must file a motion and make an affirmative showing of good cause that she failed to timely file her motion because of "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The following 4 factors are relevant to an excusable neglect inquiry: 1) prejudice to the non-moving party; 2) length of the delay; 3) reasons for the delay; and 4) whether the moving party acted in good faith. Sugarbaker v. SSM Health Care, 187 F.3d 853, 856 (8th Cir. 1999).

## A.    The Parties' Arguments

Osseo argues that Rule 54 controls this issue and that A.J.T.'s failure to file her motion for attorneys' fees once this Court entered judgment renders her motion for attorneys' fees untimely. Osseo relies on Rule 54(d)(2)(B)'s advisory committee note to the 1993 amendment, which provides that the potential for or

6

an actual appeal of an order "does not extend the time for filing a fee claim based on the initial judgment." See also Bentonville Sch. Dist. v. Smith, No. 5:17-CV-05134, 2019 WL 13328595, at *1 (W.D. Ark. Mar. 11, 2019) (when claiming to be prevailing party in the federal court litigation, rather than at the administrative level, the time requirement for a motion for fees articulated in Rule 54 is applicable); Spirit Lake Tribe v. Jaeger, 5 F.4th 849, 853 (8th Cir. 2021) (rejecting argument that Rule 54's filing deadline is triggered only by entry of filing final judgment, such as after an appeal, and holding that an order for a preliminary injunction triggered Rule 54's filing deadline).

Osseo argues that A.J.T.'s motion should be denied as untimely because A.J.T. cannot establish excusable neglect. First, A.J.T. did not file her fees motion until almost two years after this Court's final judgment. (Doc. 91 at 7.) Osseo asserts that this delay "hampers the Court's ability" to decide the issue "while the services performed are freshly in mind." (Id. at 8 (quotation omitted).)

Second, Osseo argues that A.J.T. failed to cite any reason for violating Rule 54's timelines and that "[e]ven if A.J.T. mistakenly assumed that the motion for attorney's fees did not need to be filed within 14 days of the Order," it does not appear that A.J.T. even tried to determine the accuracy of her assumption

because "her billing records do not reflect such an effort." (Id. at 7-8 (citing

Harter, 894 F.3d at 890 (affirming denial of motion for attorneys' fees when "no

effort" was made to verify mistaken assumption that caused late filing of

motion).) Osseo also states that A.J.T.'s attorney knows the deadlines because in

another IDEA case "with an identical procedural posture for all relevant

purposes," she filed a motion for attorneys' fees for services related to the

administrative hearing and district court action "despite the pending appellate

deadline." (Id. at 9 (citation omitted).)

Third, Osseo argues that A.J.T. has not acted in good faith because she

failed to file her motion in a timely manner after being instructed by the Eighth

Circuit that attorneys' fees may be sought from this Court and she did not file an

extension to the 14-day deadline. A.J.T.'s billing records show no work on

attorneys' fees or determining the time for filing a fees motion during that time.

(Id. at 2, 4, 9.) Osseo asserts that A.J.T. may have attempted to circumvent the

rules by labeling her motion "supplemental" to her Eighth Circuit fees motion by

adopting by reference statements, exhibits, and arguments related to the fees

litigation in the Circuit instead of refiling them in this Court. (Id. at 4-5, 9-10.)

Fourth, Osseo argues it was prejudiced because A.J.T.'s delay resulted in a public entity not being given formal notice about a nearly $200,000 fees claim while it was deciding whether to appeal.  (Id. at 10 (citing, inter alia, Fed. R. Civ. P. 54(d)(2)(B) advisory committee's note to 1993 amend. (purpose of filing deadline is notice of prevailing party's intention to file fees claim prior to time for filing appeal has elapsed)).

A.J.T. responds that because Osseo failed to raise the affirmative defenses it now advances, the defenses are waived.  (Doc. 92 at 2 (citing Fed. R. Civ. P. 8 (c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ."); Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008) (the defense of untimeliness is an affirmative defense under a statute of limitations that a defendant bears the burden to plead and prove).)

A.J.T. also argues that when Osseo filed a motion seeking a reduction in A.J.T.'s attorney fees in the Eighth Circuit, all the "defenses" based on A.J.T.'s late-filing in the District Court were available at that time, but Osseo remained silent.  Therefore, Federal Rule of Civil Procedure 12 also prohibits Osseo from raising timing arguments now.  (Id. at 3 (citing Rules 12(b)(2); 12(h)(1); 12(g)(2) (". . . a party that makes a motion under this rule must not make another motion

under this rule raising a defense or objection that was available to the party but

omitted from its earlier motion").)  A.J.T. argues that Osseo now seeks "to revive

a long-abandoned defense that could have—and should have—been raised in

response to the initial motion for fees and costs, permitting the Court of Appeals

to first consider it in a timely manner" and Osseo's opposition to A.J.T.'s motion

should be ignored.  (Id.)

    B.    **Analysis**

        1.    **Whether  A.J.T.'s Motion "Supplements" Her Eighth Circuit
              Filing and Whether Osseo Waived its Rule 54 Defenses**

While it is true that rather than filing her exhibits with this motion, A.J.T.

merely referred the Court to exhibits filed in conjunction with her fees petition

filed in the Eighth Circuit and captioned her motion "Supplemental Motion for

Attorney Fees," the Court need not reach the issue of whether the motion is a

"supplement" or a "new" motion that entitles A.J.T. to attorneys' fees on its own

merits.  As will be discussed below, the Court finds that in the IDEA context, a

party who is successful in the district court need not file a motion for attorneys'

fees until after the Eighth Circuit has rendered its decision and then only before

the applicable statutory time for filing an appeal from an IDEA decision has

expired.  See Dell v. Bd. of Educ. of Tp. High Sch. Dist. 113, 32 F.3d 1053, 1063

10

(7th Cir. 1994) ("permitting the IDEA attorneys' fee issue to be deferred until the

possibility of further review has been exhausted . . . usually results in significant

judicial economy by relieving the courts of a blizzard of protective suits filed

before the plaintiff knows whether he has even a ghost of a chance of obtaining

relief") (citations omitted); Meridian Joint Sch. Dist. No. 2 v. D.A., 792 F.3d 1054,

1064 (9th Cir. 2015) (describing as "anomalous" a rule that would require a

prevailing party to decide to seek attorneys' fees before the losing party decided

whether to seek judicial review); Sanchez v. Arlington Cnty. Sch. Bd., 58 F.4th

130, 137-39 (4th Cir. 2023) (holding that a claim under the IDEA for attorneys'

fees does not begin to accrue until after the losing party's time to seek

substantive review has expired); see also Brittany O. ex rel. L. v. Bentonville Sch.

Dist., 683 F. App'x. 556, 558 (8th Cir. 2017) (per curium) (holding that "whatever

limitations period applies to a prevailing party's court action to recover IDEA

attorneys' fees, it did not begin to run until the [state statutory] period had

expired for an aggrieved party to challenge the IDEA administrative decision by

filing a complaint in court").

Likewise, the Court need not reach the issue of whether Osseo waived Rule 54 defenses in the Eighth Circuit. A decision is not necessary to decide the instant motion and Osseo had no opportunity to respond to A.J.T.'s arguments.

> **2.      Whether A.J.T. was Required to File her Motion for Attorneys' fees 14 Days After this Court Entered Judgment in Her Favor**

The issue before the Court is whether the prevailing party in an IDEA case can wait to file a motion for attorneys' fees until after all appeals are exhausted to know who the final prevailing party is or if she must file a fees motion 14 days after the district court enters judgment to comply with Rule 54.

The IDEA contains no limitations period for attorney fees claims. Brittany O., 683 F. App'x at 557. In this situation, the court may borrow the most closely-analogous state statute of limitations, "unless doing so would frustrate the policy embodied in the federal law." Richardson v. Omaha Sch. Dist., 957 F.3d 869, 873 (8th Cir. 2020).

Neither Brittany O., 683 F. App'x. 556, nor Richardson, 957 F.3d 869, the Eighth Circuit cases cited by A.J.T., are on all fours because both cases address fees motions filed following an administrative proceeding, not following an appeal from a district court judgment, as in this case.

However, <u>Harter</u>, 894 F.3d 885 and <u>Smith</u>, 2019 WL 13328595, cited by

Osseo, can also be distinguished.  In <u>Harter</u>, a court order imposed a 14-day

deadline to file a motion for attorneys' fees, 894 F.3d at 888, which, clearly did

not occur in this case.  In <u>Smith</u>, the court held that  <u>Brittany O.</u> did not apply

because the plaintiff was not a "prevailing party" under the IDEA because the

preliminary injunction in that case did not "materially alter[] the legal

relationship between the parties by modifying the defendant's behavior in some

way that directly benefit[ed] the plaintiff," when the injunction merely

maintained the status quo.  2019 WL 13328595, at *1.  A.J.T. is obviously the

prevailing party here and thus <u>Smith</u> is inapposite.

At first blush, <u>Spirit Lake Tribe</u>, also cited by Osseo, seems to support

Osseo's position because it held that entry of any judgment from which an

appeal lies triggers the fees filing deadline.  5 F.4th at 853-54.  However, the <u>Spirit</u>

<u>Lake Tribe</u> court found that the plaintiff's late filing was excusable neglect under

Rule 6(b)(1)(B) because the plaintiff reasonably relied on two cases that

concluded a preliminary injunction was not a "traditional judgment needed for a

triggering event for filing a motion for attorney's fees."  <u>Id.</u> at 855 (citations

omitted).  In addition, a 1993 "advisory committee note to Rule 54 also muddied

the waters by describing the relevant triggering event as the entry of 'final judgment,' despite the rule's use of the term 'judgment.'"  Id.

Here, A.J.T. argues that she reasonably relied on Brittany O. and Richardson just as the plaintiffs in Spirit Lake Tribe relied upon their two cases.

The Court finds that A.J.T. has a better argument than the Spirit Lake Tribe plaintiffs because although Brittany O. is an unpublished decision, it is a decision from the Eighth Circuit and a decision that is somewhat analogous procedurally. In Brittany O., the Eighth Circuit reversed a district court finding, inter alia, that the plaintiffs' motion for attorneys' fees was untimely.  683 F. App'x at 558.  The court held that when the hearing officer's decision was rendered on November 25, 2013, the 90-day period for the school district to challenge the hearing officer's decision under the applicable Arkansas state statute ended on Sunday, February 23, 2014, and only then did the limitations period began to run for the prevailing party to either agree with the opposing party on attorneys' fees or to bring an action in court for fees within the applicable limitations period if no agreement was reached.  Id.  Therefore, the plaintiffs' March 5, 2014 IDEA attorneys'-fees complaint was timely filed, even if the applicable limitations period under Arkansas law was 90 days.  Id.  The court reasoned,

> [W]hatever limitations period applies to a prevailing party's court
> action to recover IDEA attorneys' fees, it did not begin to run until
> the 90-day period had expired for an aggrieved party to challenge
> the IDEA administrative decision by filing a complaint in court.
> Upon expiration of this period, an administrative decision becomes
> final, and the parties know who is the prevailing party.  Thereafter,
> the parties have an opportunity to agree on the matter of attorneys'
> fees, and if no agreement is reached, the prevailing party may bring
> an action in court, within the applicable limitations period, seeking
> attorneys' fees under the IDEA.

Id. (adopting approach taken in D.G. ex rel. LaNisha T. v. New Caney Indep.

Sch. Dist., 806 F.3d 310, 319-21 (5th Cir. 2015) & McCartney C. ex rel. Sara S. v.

Herrin Cmty. Unit Sch. Dist. No. 4, 21 F.3d 173 (7th Cir. 1994)).  When using this

approach, there are no concerns regarding whether the losing party will seek

judicial review of the administrative decision before the prevailing party must

decide to file an action for attorneys' fees.  See Richardson, 957 F.3d at 875-76

(citing Brittany O., 683 F. App'x. at 558).

Like Arkansas, Minnesota has a 90-day limitations period to appeal IDEA

administrative hearing decisions.  Minn. Stat. § 125A.091 subdiv. 24.

No binding precedent addresses the posture of the case before the Court

because the IDEA cases address appeals from ALJ decisions and this case

involves an appeal from a district court decision.  However, A.J.T. cites cases

from other jurisdictions that address appeals from district court decisions.  (Doc.

92 at 7-9 (citing <u>Dell</u>, 32 F.3d at 1063 (reasoning that "permitting the IDEA

attorneys' fee issue to be deferred until the possibility of further review has been

exhausted . . . usually results in significant judicial economy by relieving the

courts of a blizzard of protective suits filed before the plaintiff knows whether he

has even a ghost of a chance of obtaining relief"); <u>Meridian</u>, 792 F.3d at 1064

(affirming district court's determination that the request for attorneys' fees was

timely filed under the most analogous state statute of limitations and describing

as "anomalous" a rule that would require a prevailing party to decide to seek

attorneys' fees before the losing party decided whether to seek judicial review);

<u>Sanchez</u>, 58 F.4th at 137-39 (a claim under the IDEA for attorneys' fees does not

begin to accrue until after the losing party's time to seek substantive review has

expired) (citing, <u>inter alia</u>, <u>Richardson</u>, 957 F.3d at 875).)

Although <u>Brittany O.</u> was an unpublished decision, <u>Richardson</u> adopted

its reasoning and holding.  <u>Richardson</u> reiterated that district courts should

borrow the statute of limitations for merits actions from state statutory schemes

for IDEA compliance in cases like this "because the claim for attorneys' fees is

ancillary to judicial review of the administrative decision."  957 F.3d at 875 (citing

<u>C.M. ex rel. J.M. v. Bd. of Educ. Henderson Cnty.</u>, 241 F.3d 374, 380 (4th Cir.

2001) ("Logic virtually compels the conclusion that a state special education statute, specifically enacted to comply with the IDEA, constitutes the state statute most analogous to the IDEA.")) (cleaned up).

The <u>Richardson</u> court reasoned that adopting the state statutory framework would not frustrate policy embedded in the IDEA, "particularly in our circuit <u>where we have held</u> that the statute of limitations period for a prevailing party seeking attorneys' fees does not begin to run 'until [the applicable state statutory period] expires for an aggrieved party to challenge the IDEA administrative decision by filing a complaint in court.'" <u>Id.</u> (emphasis added) (quoting <u>Brittany O.</u>, 683 F. App'x at 558).

Accordingly, the Court finds the Eighth Circuit precedent addressing appeals from administrative decisions and cases from our sister circuits addressing this factual situation persuasive. In many IDEA cases, the party who prevails at the administrative level files a separate case for attorneys' fees. <u>See, e.g.</u>, <u>LaNisha T.</u>, 806 F.3d at 320 n.9 (explaining that Rule 54(d)(2) "presupposes a final judgment in federal court and a fees request brought by motion in the same court, whereas § 1415(i)(3)(B) [the IDEA attorneys' fees provision], contemplates the filing of a new civil action in a new forum") (citing, <u>inter alia</u>, <u>McCartney C.</u>,

21 F.3d at 175).  However, that was not the case in <u>Brittany O.</u>, where the plaintiff

filed in the district court not only a claim for attorneys' fees but also separate

claims under the Rehabilitation Act, the ADA, and § 1983.  683 F. App'x at 556.

Even though <u>Brittany O.</u> and <u>Richardson</u> do not control, their discussions

of the IDEA and the underlying principles of adopting the controlling state

education statutory scheme timelines in these cases are persuasive.  <u>See</u> <u>Dell</u>, 32

F.3d at 1063. Neither school districts nor most families of special needs children

have the funds or time to engage in the extra litigation intermediate fees petitions

entail.  (<u>See</u> Entry ID 5380313 (Apr. 4, 2024 Goetz Decl.) ¶ 25 (explaining that

parents of children with disabilities "are often financially strapped due to the

demands of increased costs of care for their child and limits on their

employment").)  And, it is common for litigants to request costs and fees in their

pleadings, which puts an opposing party on notice.  <u>See, e.g.</u>, <u>Spirit Lake Tribe</u>, 5

F.4th at 855 (defendant had notice that plaintiff planned to seek attorneys' fees if

they prevailed because complaint sought attorneys' fees and costs).

Accordingly, the Court finds that no filing timeline applies to an IDEA

claim for prevailing party attorneys' fees until the determination of the

prevailing party is final.

### 3.    Whether A.J.T.'s Fees Motion was Timely Filed

Under Minn. Stat. § 125A.091 subdiv. 24, a "parent or district may seek

review of the hearing officer's decision . . . in the federal district court.  A party

must appeal . . . to the federal district court within 90 days of receiving the

hearing officer's decision."  A.J.T. is filing for fees based on the final order from

the Eighth Circuit.  Therefore, the proper timeline for this case looks like this:

| | |
|---|---|
| March 21,2024: | Eighth Circuit affirmed this Court's decision; |
| April 4, 2024: | A.J.T. filed timely motion for attorneys' fees in Eighth Circuit; |
| May 30, 2024: | Eighth Circuit issued fees order with directive to "seek fees attributable to district court proceedings before the district court"; |
| June 12 – Aug. 20, 2024: | The parties negotiated a fees settlement in the case, but Osseo, without explanation, refused to sign the "Final Settlement Agreement and Release" that included all terms (Doc. 93 (Goetz Second Suppl. Decl.) ¶¶ 2-4); and |
| Aug. 27, 2024: | A.J.T. filed Supplemental Motion for Attorney's Fees in this Court. |

Based on this timeline, A.J.T.'s fees motion was timely filed in this Court.

See Brittany O., 683 F. App'x. at 557-58.  The reasoning of the Brittany O. court is

sound because it promotes not only judicial economy, but also the opportunity

for the parties to reach resolution on the issue of attorneys' fees themselves.

Only if the parties are unable to reach a resolution, can the prevailing party bring

an action for fees in the court within the 90-day limitations period.  Id.;

19

Richardson, 957 F.3d at 875; see also Dell, 32 F.3d at 1063; Meridian, 792 F.3d at 1064; Sanchez, 58 F.4th at 139.  That is what occurred in this case.

### 4. Whether A.J.T.'s Late Filing is the Result of Excusable Neglect

Although Osseo is correct that A.J.T. filed her fees motion almost two years after the Court's final judgment in this case and that A.J.T. has never filed a motion for an extension, A.J.T. has explained her failure to comply with Rule 54's timelines and Osseo was not prejudiced by not being given formal notice of A.J.T.'s fee claim.  A.J.T.'s September 2021 answer to Osseo's complaint asked the Court to award defendants costs, disbursements, and attorneys' fees related to this action. (Doc. 4 at 8.)  See Spirit Lake Tribe, 5 F.4th at 855 (the complaint provided some notice because it sought an award of attorney fees and costs).

In addition, A.J.T. filed her claim for attorneys' fees within 90 days of the Eighth Circuit's decision on attorneys' fees.  In the meantime, the parties met and conferred to resolve the fees issue.  It would have been a waste of the parties' time and of judicial resources for A.J.T. to file her fees claim earlier, before knowing if Osseo was going to seek rehearing in the Eighth Circuit en banc or even appeal to the Supreme Court.  Osseo fought A.J.T. at every juncture in this case and further litigation was not out of the realm of possibility.  When Osseo

20

did not seek review, A.J.T. filed her fees motion near the 90-day deadline for

appealing IDEA administrative decisions under Minn. Stat. § 125A.091 subdiv.

24.  Although the statute addresses appeals from administrative decisions and

not court orders, it is still a better fit than Rule 54 because the statute addresses

the realities of the IDEA-appeals process.  See Richardson, 957 F.3d at 875;

Brittany O., 683 F. App'x. at 557-58; LaNisha T., 806 F.3d at 319-20.

Even if Rule 54 were to control, at the very least, A.J.T.'s late filing was the

result of excusable neglect under Rule 6(b)(1)(B) because of the lack of precedent

on this issue; A.J.T.'s reasonable reliance on Brittany O. and Richardson; and

because of Osseo's apparent bad faith in negotiating with A.J.T. for almost 90

days, reaching a settlement on attorneys' fees, and then refusing to sign the

negotiated fees stipulation.  See Sugarbaker, 187 F.3d at 856 (listing the excusable

neglect factors).  That Osseo was able to cite one case wherein Counsel filed a

motion for attorney's fees in this court when an appeal was pending is

dispositive of nothing, especially when one considers how many IDEA cases Ms.

Goetz has filed in this district.  (See Entry ID. 5380313 (Apr. 4, 2024 Goetz Decl.)

¶¶ 11-24 (explaining that Goetz has focused her practice in the area of education

law since 1995, enjoys a stellar national reputation in this area of law, and is part

of a very small Minnesota community of lawyers practicing in this area of law).)

### C.    Conclusion

Although Rule 54 is clear for most cases, the IDEA, with its lack of

deadlines and the need to adopt state deadlines, muddies the waters.  Therefore,

no filing deadline applies to an IDEA fees claim until the determination of the

"prevailing party" is final.  Here, for all the reasons discussed above, that party is

A.J.T. and her fees request was timely filed

## V.    AJT's FEE REQUEST

### A.    Request for $190,218.75 in Unpaid Attorneys' Fees Remaining From the Fees Claim Filed in the Eighth Circuit

Osseo argues that A.J.T. seeks fees for work performed on unsuccessful

claims; work performed after the Eighth Circuit's decision; and for billing entries

that have vague descriptions, that are block billing entries in quarter-hour

increments, or are impermissible entries for clerical work billed at law clerk or

attorney rates.  (Doc. 91 at 11-14.)  For all these billing errors, Osseo requests that

A.J.T.'s requested fees be reduced by 75 percent.  (<u>Id.</u> at 10.)

A.J.T. responds that Osseo is making the "same meritless arguments" that

were rejected by the Eighth Circuit on the initial fees claim and that there is no

merit to Osseo's "outrageous claim" when Osseo needlessly protracted the final

resolution of this matter through "one meritless appeal after another" and when

Osseo expended more than three times the number of hours as A.J.T. did in these

proceedings.  (Doc. 92 at 13 (citing Entry ID 5384486 (Goetz Second. Decl.) ¶ 8.)

### 1.    A.J.T.'s Billing Rates

District courts have broad discretion to award attorneys' fees.  Hanig v.

Lee, 415 F.3d 822, 825 (8th Cir. 2005).  "The starting point in determining attorney

fees is the lodestar, which is calculated by multiplying the number of hours

reasonably expended by the reasonable hourly rates.  When determining

reasonable hourly rates, district courts may rely on their own experience and

knowledge of prevailing market rates."  Id. (citations omitted).  "The district

court should exclude hours that were not reasonably expended.  The onus is on

the party seeking the award to provide evidence of the hours worked and the

rate claimed."  Wheeler v. Mo. Highway & Transp. Comm'n, 348 F.3d 744, 754

(8th Cir. 2003) (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  "Assessing

the reasonableness of a fee requires [the Court] to consider the plaintiff's overall

success; the necessity and usefulness of the plaintiff's activity in the particular

matter for which fees are requested; and the efficiency with which the plaintiff's

attorneys conducted that activity." Jenkins, 127 F.3d at 718.

A.J.T. has submitted bills for work at the following rates, which Osseo

does not contest, and which the Court finds are reasonable for this market.

- Law clerks:                $100/hour
- Contract attorneys:        $200 - $300/hour
- Attorney Amy Goetz:        $300 - $400/hour (rates increased over time)

(Entry ID 5380313 (Apr. 4, 2024 Decl.) ¶¶ 2-5).)

### 2.    Fees Billed for Unsuccessful Claims

"Attorney's fees should not be awarded for hours spent pursuing

unsuccessful claims that are distinct in all respects from the prevailing claims.

Claims are related, rather than distinct, if they are based on a common core of

facts or on related legal theories." Gruttemeyer v. Transit Auth., 31 F.4th 638,

649–50 (8th Cir. 2022) (cleaned up) (internal quotation omitted) (citing Hensley,

461 U.S. at 435). Claims are related to and intertwined with other claims where

the same evidence and witnesses are required and the same damages are at issue.

Id. at 650. "The essential goal in shifting fees (to either party) is to do rough

justice, not to achieve auditing perfection. So trial courts may take into account

their overall sense of a suit, and may use estimates in calculating and allocating

an attorney's time."  <u>Mackey v. Arteka Cos., LLC</u>, No. 18-CV-2610 (JNE/ECW),

2020 WL 13953721, at *1 (D. Minn. June 12, 2020) (quotation omitted).

Osseo opposes billings for a few hours of time A.J.T.'s legal team spent

working on (1) her unsuccessful disability claim, (2) her unsuccessful motion to

show cause, and (3) amending the complaint at the administrative level to

include a claim that was eventually withdrawn.  A.J.T., however, encourages the

Court to take a more "wholistic view to the costs of litigation" that focuses on the

"uniformly excellent results" achieved for A.J.T.  (Doc. 92 at 13 (citing <u>Jenkins</u>,

127 F.3d at 716).)[5]

### a)    Fees Associated with Discrimination Claim

A.J.T. states that contrary to Osseo's assertion, no fees are being claimed

for the discrimination claim and when entries were inadvertently claimed, they

"were already deducted from the initial claim."  (<u>Id.</u> at 14 (citing Entry ID

5380313 (April 4, 2024 Goetz Decl.) ¶ 4).)  Indeed, the billing statements highlight

the inadvertent entries that A.J.T. notes were "billed and paid but are not

---

[5] By and large, the parties cited to billing records submitted in support of A.J.T.'s motion for attorneys' fees filed in the Eighth Circuit.

recoverable in this action."  (Entry ID 5380313 (billings submitted to Eighth Cir.).)

No reduction in fees is warranted.

### b)    Fees Associated with Motion to Show Cause

> If any issues on which the plaintiff lost are unrelated to those on
> which he won, the unrelated issues must be treated as if they were
> separate cases and no fees can be awarded.  If, however, the claims
> on which the plaintiff lost are related to those on which he won, the
> court may award a reasonable fee.  The most important factor in
> determining what is a reasonable fee is the magnitude of the
> plaintiff's success in the case as a whole.  If the plaintiff has won
> excellent results, he is entitled to a fully compensatory fee award,
> which will normally include time spent on related matters on which
> he did not win.

Jenkins, 127 F.3d at 716 (discussing 42 U.S.C. § 1988) (citations omitted).

Sometimes,

> the plaintiff's claims for relief will involve a common core of facts or
> will be based on related legal theories.  Much of counsel's time will
> be devoted generally to the litigation as a whole, making it difficult
> to divide the hours expended on a claim-by-claim basis.  Such a
> lawsuit cannot be viewed as a series of discrete claims.  Instead the
> district court should focus on the significance of the overall relief
> obtained by the plaintiff in relation to the hours reasonably
> expended on the litigation.

Hensley, 461 U.S. at 435.

On November 18, 2022, the Court denied A.J.T.'s motion for an order to

show cause why Plaintiff should not be found in contempt.  (Doc. 79.)  A.J.T. had

sought an order requiring the Osseo Area Schools Superintendent to appear in

person to show cause, if any, as to why an order should not be entered, among

other things, adjudging the Osseo Area Schools guilty of refusing to obey the

Court's September 13, 2022 Order requiring Osseo to extend A.J.T.'s school day

until 6:00 p.m. and to provide compensatory education hours.  In response,

Osseo showed that a state-wide shortage of special education teachers hindered

its ability to hire teachers to work with A.J.T.  (Id. at 1-2.)

Therefore, although the Court denied this motion, fees associated with the

motion are related to the core issue on which A.J.T. won: compensatory hours of

education and an extended school day.  See Jenkins, 127 F.3d at 716.  A legal

victory is meaningless if it cannot be enforced.  A.J.T. merely sought to enforce

her victory.  While the teacher shortage rendered A.J.T.'s proposed solution

unrealistic, that does not mean the motion was not intertwined with the original

claim.  See Gruttemeyer, 31 F.4th at 650.  No reduction in fees is warranted.

### c)    Fees Associated with A.J.T.'s Amendment to Her Complaint for a Withdrawn Claim

Osseo cites billing entries associated with A.J.T.'s claim brought before the

ALJ for an independent educational evaluation.  (Entry ID 5380313 (billing

statements) at 26, 28, 30-31.)  The claim was withdrawn prior to adjudication.

(Id.)  The Court agrees.  The entries found at Entry IDs 5380313 at 28 and 31 are easily excised.  Therefore, $250.00 will be deleted from Counsel's requested fees.

However, the entries found at Entry IDs 5380313 at 26 and 30 are part of block billed entries, which makes them difficult to parse, especially Entry ID 5380313 at 26, which includes billing entries for multiple dates that addressed this issue, all of which are block-billed.  The block billings are part of larger billings that total 5.75 billed hours at $400.00/hour for a total of $2300.00.

Block billing involves "the lumping together of daily time entries consisting of two or more task descriptions." King v. Turner, 05-CV-388 (JRT/FLN), 2007 WL 1219308, at *3 (D. Minn. April 24, 2007).  The Eighth Circuit does not ban the use of block billing.  Id.  However, if "a block entry is confusing or makes it difficult to allocate reasonable time to a specific task, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion." Nali v. MaxPro Flooring, LLC, No. CIV. 09-3625 MJD/JJK, 2013 WL 1899925, at *2 (D. Minn. May 7, 2013) (quotation omitted).  The Court finds that a 30% reduction to these fees is appropriate, rather than a reduction in specific hours because such a reduction would be difficult to calculate.  See United States v. Bayer Corp., No. 08-CV-5758 (MJD/ECW), 2024 WL 1421081, at *10 (D. Minn.

Jan. 25, 2024) (applying percentage reduction to fee request when an hours reduction would be difficult to calculate with accuracy), <u>R&R adopted sub nom.,</u> <u>United States ex rel. Simpson v. Bayer Corp.,</u> 2024 WL 1420690 (D. Minn. Apr. 2, 2024), and <u>R&R adopted sub nom.,</u> <u>United States ex rel. Simpson v. Bayer Corp.,</u> 2024 WL 5136088 (D. Minn. Apr. 10, 2024). $690.00 will be deleted from Counsel's requested fees.

Thus, a total of $940.00 will be deleted from counsel's fee request for fees associated with the withdrawn amendment. ($250.00 + $690.00 = $940.00).

### 3. Fees for Clerical Tasks

The weight of authority is that fees for clerical and administrative tasks are considered overhead and are not separately recoverable. <u>Id.</u> at *8. "[P]urely clerical tasks should not be billed at paralegal or attorney rates, regardless of who performed such tasks." <u>Gruttemeyer</u>, 31 F.4th at 651.

Osseo argues that Counsel billed law clerk or attorney rates for performing certain clerical tasks such as labeling, preparing and organizing exhibits. Osseo cites the following billing entries that it says represent clerical tasks.

| Category | Date | Tasks | Hours Billed | Part of Block-billed entry? [6] |
|---|---|---|---|---|
| **Goetz Billings $400/hr.** | 11/05/20 | summarize exhibit categories | .50 | ✓ |
| | 01/25/21 | cull docs. to mark exhibits; begin to index exhibits | 2.25 | ✓ |
| | 01/27/21 | emails with Cece re: exhibits[7] | .50 | ✓ |
| **Law Clerk billings $100/hr.** | 10/06/20 | label and organize exhibits | 3.75 | ✓ |
| | 11/05/20 | gather exhibits; establish workflow; create list of categories of exhibits required for Monday 11/9 | 4.25 | ✓ |
| | 11/08/20 | create exhibits; create electronic index and filing system for exhibits | 4.00 | ✓ |
| | 01/27/21 | organize exhibits | 1.00 | |
| | 01/31/21 | prepare indexes and exhibits for hearing | 6.50 | |

Billing attorney time for indexing exhibits and billing law clerk time for labeling, organizing, filing, and indexing exhibits is disallowed. These are clerical tasks that do not require specialized paralegal or legal training and fees

---

[6] If a cited entry was part of a block-billed entry, the number of hours is the total number of hours for the entire "block."

[7] "Cece" is not identified, although may be a student law clerk whose first name is Cecelia. (Goetz Apr. 4, 2024 Decl. ¶ 2.)

will not be allowed for these tasks.  <u>Bayer</u>, 2024 WL 1421081, at *8.  On the other

hand, culling, creating, categorizing, and summarizing exhibits and creating

workflows and lists of categories takes at least some legal knowledge and

training and was therefore, properly billed.

 7.50 hours of improperly-billed law clerk time (01/27/21; 01/31/21), or

$750.00, is easily deducted from the above billing statement.  Because the other

improperly-billed law-clerk entries (10/06/20; 11/08/20) are part of block-billed

entries that appear to contain two tasks, one properly billed and one improperly

billed, the Court will award half fees for the block-billed entries.  The blame for

these confusing billing entries lies with Counsel because she was "in the best

position to mitigate any confusion."  <u>Nali</u>, 2013 WL 1899925, at *2.  Accordingly,

the fee is further reduced by $387.50 (3.875 hrs. x $100.00).

 Likewise, the Court will reduce the fees by half for the Goetz 01/25/21

block-billed entry that contains two different tasks for an additional reduction of

$450.00 (1.125 hrs. x $400.00).  <u>Id.</u> ("splitting the difference" when block billing

made it difficult to allocate time spent on specific tasks).  The 01/27/21 entry for

"emails with Cece re: exhibits," however, is part of a lengthy block-billed entry

that contains many tasks and is .50 total hours.  It is impossible to excise this

email from the block-billing, and any reduction should the Court do so would be de minimis, given that the rest of the entry contains legitimately-billed activities. No reduction will be assessed.

Thus, the fees request is reduced for clerical tasks a total of $1,587.50 ($750.00 + $387.50 + $450.00).

**4.    Fees for Vague Time Entries, Block Billing, and Billing in Quarter-Hour Increments**

Osseo argues that Counsel's billing request should be reduced because the billing entries are vague, block-billed, and/or billed in quarter-hour increments.

It is well-settled that billing entries "must be sufficiently detailed for the district court to ascertain reasonableness." Bayer, 2024 WL 1421081, at *9 (citing H.J., Inc. v. Flygt Corp., 925 F.2d 257, 260 (8th Cir. 1991)) (explaining that incomplete or imprecise billing records may prevent meaningful review of a fee request and that inadequate documentation may justify a reduced fee).

Osseo cites numerous "vague" entries for communications with A.J.T.'s parents and others that give no "indication what the communication was about," rendering "the reasonableness or recoverability" of the time impossible to ascertain.  (Doc. 91 at 12-13.)  The "communications" are most often calls and emails that, for the most part, contain no explanation as to their purpose and/or

32

relation to the case.  For example, an entry on 02/11/2019 for "telephone

consultation and advice with Gina and Aaron," with no further explanation; an

entry on 09/11/2020 for "read email from clients" that is part of a larger block-

billing; entries on 02/09/2021 for "telephone call with clients" and "telephone call

with Ott" with no explanations.  This time is not recoverable.  It is "too void of

context or subject matter to ascertain the nature of the task and the

reasonableness of time expended."  <u>Customs Fraud Investigations, LLC v.</u>

<u>Victaulic Co.</u>, No. CV-13-2983, 2019 WL 4280494, at *7-8, (E.D. Pa. Sept. 9, 2019)

(striking as insufficiently described hours billed and identified as "conference,"

"call," etc., with no information as to relation to case).

The majority of the cited entries are also block-billed, which makes it

difficult, if not impossible, to parse what part of each billing entry should be

attributed to the communications and what part of the billing should be

attributed to other tasks.  For example, Osseo notes that the June 3 and July 23,

2019 block-billed entries include nonrecoverable time for attending IEP meetings

or work on unrelated claims but may also include time for recoverable work.

(Doc. 91 at 13 (citing ID 5380313 (billing statements) at 11-12, 23).)  Although

Osseo acknowledges that it appears some fees were deducted from the entries,

the entries do not delineate the amount of time spent on each activity and thus, it is impossible to determine whether the deductions accurately reflect the amount of time spent on all unrecoverable work. (Id.)

The block-billed invoices here are confusing and make it difficult to allocate reasonable time to specific tasks. Nali, 2013 WL 1899925, at *2. Accordingly, a reduction in fees will be allowed to account for the block billing, just as the Eighth Circuit determined in this case.

Osseo also asserts that Counsel's billing in quarter-hour increments "raises significant concern about the unreasonable inflation of attorneys' fees." (Doc. 91 at 13.) Osseo cites several instances where Counsel billed one-quarter of an hour for reading, responding and/or forwarding emails and simple court orders or other documents, and for telephone conferences. (Id. at 13-14.) Although Counsel attests that she only billed for tasks that took at least 15 minutes, Counsel also states that when tasks required fewer than 15 minutes, they were not billed or they were "combined with other tasks requiring at least fifteen minutes of time." (Entry ID 5384486 (Apr. 17, 2024 Goetz Second Decl.) ¶ 6.) While the Court does not believe that Counsel "inflated" her billings, the Court is also unable to untangle tasks that are combined with other tasks.

The vague entries cited above are not only mostly block billed, they are also billed in 15-minute increments. In addition, the Court's independent review of six years of billing records shows that these billing practices were by far the rule and not the exception. Because of this, the Court will apply a 15% deduction to the final fees award to account for block billing, vague billing entries, and for billing in 15-minute increments. (<u>See</u> Entry ID. 5398933 at 1 (Eighth Circuit opinion reducing award of fees by 15% because billing entries were vague, block-billed, and billed in quarter-hour increments).)

The 30% reduction the Court applied to the Fees Associated with A.J.T.'s Amendment to Her Withdrawn Claim, part V.A.2.c., <u>supra</u>, was only 30% in anticipation of this additional 15% across-the-boards reduction. Likewise, the reductions the Court applied to the clerical block-billings does not insulate them from this reduction because those tasks were improperly billed.

### 5. Conclusion

Counsel requests $190,218.75 from the unpaid fees claim filed in the Eighth Circuit. Based on the above discussion, the Court has made the following reductions to Counsel's fee petition.

- $ 940.00 for fees associated with the withdrawn amendment

- $1,587.50 for fees associated with clerical tasks

Thus, the final claim before the Court applies the 15% reduction for vague entries, block billing, and billing in quarter-hour increments, is $187,691.25 ($190,218.75 - $940.00 - $1,587.50 = $187,691.25).

Once the Court applies the 15% reduction for vague entries, block billing, and billing in quarter-hour increments as the Eighth Circuit did, the final total award for unpaid attorney's fees remaining from the fees claim originally filed in the Eighth Circuit is $159,537.56.

**B.    Request for $6,480.00 in Fees Incurred From the Time of the Issuance of the Eighth Circuit's Order to August 27, 2024**

A.J.T. incurred $6,480.00 in fees between May 30 and August 27, 2024—the dates of the Eighth Circuit's order and her filing the instant motion.  Broadly speaking, these fees are related to the parties' settlement negotiations and preparation of the brief in support of the instant motion.  (Doc. 86-1.)  A.J.T. claimed these fees and filed billing statements related to these fees with her brief in support of the instant motion.  Osseo does not oppose these fees.  (Doc. 91.)

Although A.J.T. did not bill for these services in quarter-hour increments, she did block-bill.  This, however, is not fatal to the billing because, for the most

36

part, the Court is able to discern what tasks each billing entry is for.  See

Nathanson v. Diversified Adjustment Serv., Inc., No. 18-cv-3102 (PJS/ECW), 2019

WL 4387960, at *5 (D. Minn. Sept. 13, 2019) (stating that block-billing is only

problematic when the hours billed appear to be excessive or when hours must be

excised for certain tasks).  The June 25, 2024 entries for "meet and confer . . ." and

"email to clients with update from meet and confer" are not detailed, but in

context, it seems obvious that these entries, totaling 24 minutes of lawyer time,

were for time discussing settlement.  See Bayer, 2024 WL 1421081, at *10 (certain

challenged block billed entries could be understood in context) (citation omitted).

The August 13, 2024 entry contains a block-billing for responding to an

email on multiple topics, including "settlement of discrimination claims," which

is not billable time.  (Doc. 86-1 at 6.)  However, the entire entry is for six minutes

of attorney time and the email covered multiple topics.  The Court will not cut

any time from this entry because it would be difficult to do so, the savings would

be de minimus, and Osseo saw this billing and did not object to it.

Accordingly, Osseo is ordered to pay A.J.T. the $6,480.00 in fees incurred

between the time of the Eighth Circuit's order and August 27, 2024.

**C.**     **Request for $8,600.00 in Fees Incurred From August 27, 2024 to September 17, 2024**

A.J.T. requests $8,600.00 in fees for replying to Osseo's response to A.J.T.'s motion.  (Docs. 93, 93-1.)  The requested fees were billed from September 11-17, 2024.  (Doc. 93-1.)  All work was done by Attorney Goetz and was billed in six-minute increments.  (Id.)  Save for .2 of an hour for reading and sending Osseo's response brief to A.J.T., all other work was billed for researching and drafting A.J.T.'s reply brief to Osseo's response to A.J.T.'s motion for attorney's fees.  (Id.)

The Court finds these fees reasonable.  As discussed above, A.J.T. was forced to file a petition for attorneys' fees after negotiating a fees settlement for three months and believing the parties had reached an agreement on the issue.  Therefore, the bills are, at least in part, Osseo's doing.  And, as also previously discussed, Goetz's hourly rates are reasonable and the entries in this billing statement are documented to the Court's satisfaction.

Accordingly, Osseo is ordered to pay A.J.T. the $8,600.00 in fees for replying to Osseo's response to A.J.T.'s motion.

**D.    Request for $60,185.16 in Fees and Costs the Eighth Circuit Awarded Plus Statutory Interest**

As discussed above, the Eighth Circuit awarded A.J.T. $60,185.16 in attorneys' fees and costs.  However, at the time A.J.T. filed her reply brief, Osseo

had not yet paid A.J.T. any fees or costs.  A.J.T. claims she is not only entitled to the fees, but also to statutory interest at a daily rate of .0122%.

Osseo makes no excuse for failing to pay the fees it was ordered to pay but argues that A.J.T. is not entitled to post-judgment interest on the Eighth Circuit's award of attorneys' fees.  (Doc. 91 at 14-15 (citing R.M.M., 2017 WL 6453302, at *8 (declining to award interest when plaintiff failed to cite authority for proposition that interest is permitted on attorneys' fee award under the IDEA).)

Counsel counters that R.M.M. addressed a request for pre-judgment interest and therefore is irrelevant.  (Doc. 92 at 15-16.)  Rather, Counsel asserts that the Court should treat this case like any civil case and award post-judgment interest under 28 U.S.C. § 1961(a).  (Id. at 16.)

The Court will award post-judgment interest in this case.  Although Osseo is correct that R.M.M. addressed a request for post-judgment interest on an award of attorneys' fees, the Court does not find that dispositive.  See 2017 WL 6453302, at *2, *8 (plaintiff sought both pre- and post-judgment interest).  The IDEA's fee statute is silent as to an award of post-judgment interest, instead providing that ". . . the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party. . . ."  20 U.S.C. § 1415(i)(3)(B).  Here,

39

the Court finds that an award of post-judgment interest is appropriate based on

Osseo's failure to pay the fees and costs awarded in a timely manner.

Therefore, Osseo is ordered to pay A.J.T. the $60,185.16 in fees and costs

the Eighth Circuit awarded A.J.T. plus daily post-judgment interest on that

award from May 30, 2024 until the date of payment at a rate of .0122% per day.

## VI.    CONCLUSION

Based on the above discussion, Osseo is ordered to pay A.J.T. the following

attorneys' fees and costs:

| | |
|---|---|
| $159,537.56 | Unpaid attorney's fees remaining from the fees claim filed in the Eighth Circuit |
| $ 6,480.00 | Fees incurred from the time of the Eighth Circuit's order to August 27, 2024 |
| $ 8,600.00 | Fees incurred From August 27 to September 17, 2024 |
| **$174,617.56** | **Total Fees Due for Work Done at the Administrative and District Court Level** |
| $ 60,185.16 | Fees and costs the Eighth Circuit awarded A.J.T. |
| **$234,802.72** | **Total Fees and Costs Due Plus Daily Interest as Detailed Below** |
| Daily interest on $60,185.16 | Daily interest on the award of fees and costs the Eighth Circuit awarded A.J.T. from May 30, 2024 until the date of payment at rate of .0122% per day |

## VII.   ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY**

**ORDERED** that Defendant A.J.T.'s Supplemental Motion for Attorney Fees

**[Doc. 83]** is **GRANTED in part and DENIED in part** as detailed in this Order.

Plaintiff Osseo Area Schools must pay Defendant A.J.T. attorneys' fees and

costs in the following amounts within one week of signing of this Order:

1.    **$174,617.56** in fees for work done at the administrative and district court level;

2.    **$60,185.16** for unpaid fees and costs the Eighth Circuit awarded A.J.T. on May 30, 2024; and

3.    **Daily interest at the rate of .0122% on $60,185.16** from May 30, 2024 until the date of payment.

Dated:   March 25, 2025                              s/Michael J. Davis
                                                     Michael J. Davis
                                                     United States District Court